IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FERNANDO YATES, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:22-CV-2121 |
| | § | |
| SPRING INDEPENDENT SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Pending before the Court is Defendant Spring Independent School District ("Spring ISD" or "Defendant" or the "District") Motion for Summary Judgment. (Doc. No. 87). Plaintiff Fernando Yates ("Yates" or "Plaintiff") Yates filed a Response (Doc. No. 89), and Defendant filed a Reply (Doc. No. 90). Plaintiff filed a Sur-Reply. (Doc. No. 91). Plaintiff also filed a document that is titled "Exhibits." (Doc. No. 92). Defendant responded to Plaintiff's document (Doc. No. 93), and Plaintiff filed a Reply. (Doc. No. 94). After considering the motions, the evidence, and the applicable law, the Court grants Defendant's Motion for Summary Judgment. (Doc. No. 87)

## I. BACKGROUND

This is an alleged employment discrimination case. Plaintiff Yates began working as an eighth-grade math teacher for Spring ISD at Spring Leadership Academy. A few weeks into the school year it became evident that he needed assistance, so the District designed a support plan for Plaintiff. The purpose of the support plan was to assist Plaintiff in areas of need, including lesson planning and structural development.

After a few months, the only other eighth grade math teacher resigned, leaving her students without an instructor. At that point, the Defendant chose to combine all eighth-grade math classes

1

and had the class assigned to Carolyn Martinez ("Martinez"). At first, Plaintiff remained an eighth-grade math teacher with Martinez. Eventually, Spring ISD asked him to provide "push-in" support for 6th grade math. As a push-in teacher, Plaintiff was tasked with working with smaller groups of students who needed assistance catching up to their peers. Plaintiff did not work in a classroom of his own but instead taught in the media center.

A month later, Plaintiff was reassigned to teach seventh grade math, but shortly after, he was again replaced. This time he was replaced my by Melissa Lugo ("Lugo"), a new teacher straight out of college. Yates was then placed back in the "push in" position—this time in sixth grade.

Later that year, Plaintiff requested a transfer from Spring Leadership Academy to another Spring ISD school. Defendant approved his transfer, and he was offered the chance to teach at Bailey Middle School ("Bailey") for the 2022-2023 school year.

At Bailey, students (and parents) submitted complaints that Plaintiff was yelling at them and not allowing them to go to the restroom or the nurse's office. The Defendant assigned the complaints to Assistant Superintendent for Human Capital, Pam Farinas ("Farinas"). Farinas did not know that the Plaintiff was the accused but based on the file recommended that the accused teacher be placed on leave pending an investigation. The Defendant followed Farina's recommendation and placed Plaintiff on leave pending the conclusion of the investigation. Plaintiff was subsequently placed on paid leave. The investigation showed that the Plaintiff failed to allow one student to go to the restroom, but he was otherwise cleared of all the allegations. Plaintiff still works at Bailey.

Plaintiff brought this case alleging discrimination, retaliation, and defamation. He alleges he was discriminated on the basis of race, color, national origin, age, and disability. The Defendant contests Plaintiff's claims in its Motion for Summary Judgment.

## II. LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

## III. ANALYSIS

Defendant presents three arguments in its Motion for Summary Judgment: (1) the Plaintiff's discrimination and retaliation claims fail as a matter of law because Plaintiff has not suffered any adverse employment action; (2) the Defendant is entitled to summary judgment on

3

Plaintiff's discrimination and retaliation claims because he cannot establish a prima facie claim[1] and because he has no evidence of pretext; and (3) the Defendant is immune from Plaintiff's defamation claim.

The Court will address each contention.

## A. Adverse Employment Action

Defendant first argues that Plaintiff is not entitled to summary judgment because he has not suffered from an adverse employment action. (Doc. No. 87 at 7).

Under Title VII of the Civil Rights Act of 1964, it is "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Age Discrimination and Employment Act ("ADEA") prohibits an employer from discriminating on the basis of age. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 473 (5th Cir. 2015). Under the Americans with Disabilities Act ("ADA"), an employer is not allowed to "discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 303–04 (5th Cir. 2020).

A party can establish Title VII, ADA, or ADEA discrimination or discrimination through either direct or circumstantial evidence. *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Where, as in this case, the plaintiff's case is built upon circumstantial evidence, a court relies upon the *McDonnell Douglas* framework for its analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S.

---

[1] Since Plaintiff's burden to prove a *prima facie* case requires a showing that plaintiff was subject to an adverse employment action, the Court will discuss Defendant's first and second arguments together.

4

792, 802 (1973). In *McDonnell Douglas*, the Supreme Court outlined a three-part framework to analyze a discrimination claim. First, the plaintiff must establish a *prima facie* case of discrimination. *Id.* If the plaintiff does so, the burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* If the employer provides a legitimate, nondiscriminatory reason for the employee's rejection, the burden shifts back to the plaintiff to prove that the employer's reason was pretext for discrimination. *Id.* at 804–05.

To establish a *prima facie* cased under Title VII, the ADEA, and the ADA, a Plaintiff must show that he suffered an adverse employment action. *Paske v. Fitzgerald*, 785 F.3d 977, 985 (5th Cir. 2015) (to establish a prima facie case of Title VII discrimination a plaintiff must show "(1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances."); *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 259 (5th Cir. 2001) ("To establish a prima facie retaliation claim under the ADEA, Holtzclaw must show (1) that he engaged in a protected activity, (2) that there was an adverse employment action, and (3) that a causal link existed between the protected activity and the adverse employment action."); *Lyons,* 964 F.3d 298 ("To establish a prima facie case of unlawful retaliation under the ADA, the plaintiff must show that: (1) she engaged in an activity protected by the ADA, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action.").

Defendant takes issue with Plaintiff's ability to establish that he suffered an adverse employment action. Specifically, Defendant contends that Plaintiff "has failed to provide any

5

competent evidence to support his claim" that he was demoted, or otherwise suffered from an adverse employment action, during the 2021-2022 school year. (Doc. No. 87 at 7).

### 1. Change of Assignment

While Defendant does not dispute that Plaintiff's teaching setting and curriculum changed, it argues that such changes are a reality of being a teacher and do not constitute an adverse employment action. (*See* Doc. No. 87 at 8). Plaintiff disagrees, claiming he suffered several adverse employment actions: (1) he was placed on a support plan; (2) he was demoted to teach students who are at risk and special needs (Doc. No. 89 at 30); (3) he was placed on administrative leave for four months (Doc. No. 89 at 32); and (4) other teachers provided him with negative feedback. The Court will discuss why each of Defendant's actions do not constitute adverse employment decisions for purposes of Title VII, the ADA, or the ADEA.

"Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004). A loss of some job responsibilities does not constitute an adverse employment action, but, in certain cases, a "change in or loss of job responsibilities ... may be so significant and material that it rises to the level of an adverse employment action." *Thompson v. City of Waco, Tx.*, 764 F.3d 500, 504 (5th Cir. 2014).

### 2. Support Plan

Importantly, the Fifth Circuit has directly held that an "employer's decision to place an employee on a performance improvement plan is not an adverse employment action." *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824–25 (5th Cir. 2019) (placing a teacher on an

improvement plan "did not result in a material loss of job responsibilities; ... [the plaintiff's] title, hours, salary, and benefits did not suffer as a result."). In the case at hand, the Defendant placed Plaintiff on a support plan to help improve his ability to prepare his curriculum and effectively teach students. Plaintiff, however, "was not terminated; his title, hours, salary, and benefits remained the same; he was moved back to a regular seventh grade classroom when he requested it; and when he requested to transfer to another school, his transfer request was approved and he was transferred to the school he requested." (Doc. No. 87 at 8). Plaintiff offered no evidence to the contrary. As such, the case at hand is similar to *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818 (5th Cir. 2019), and like in *Welsh*, Plaintiff did not suffer an adverse employment action.

Accordingly, Defendant's decision to place Plaintiff on a support plan was not an adverse employment decision for Title VII, ADA, or ADEA purposes.

### 3. Teaching Children at Risk

Next, Plaintiff asserts that he suffered an adverse employment action when he was "demoted" to teaching children at risk.[2]

The Fifth Circuit has held that "changes to the curriculum and assignment to classes with 'at risk and special needs' students" do not constitute adverse employment actions. *Welsh*, 941 F.3d at 828. Indeed, the Fifth Circuit has gone so far to recognized that "a reasonable administrator may decide to assign only their best teachers to educate students with 'special needs.'" *Id*.

It is true that Plaintiff was moved from teaching eighth and seventh grade students in classrooms to instructing children at risk or children with special needs in the media center, but there is no competent summary judgment evidence that the new position constituted a reduction

---

[2] Plaintiff does not contend that he was fired. Instead, he argues that the reassignment to teaching students at risk or special needs students was a demotion.

7

in job responsibilities or menial or degrading work. As such, as recognized in *Welsh*, the reassignment to a new teaching setting did not constitute an adverse employment decision.

**4. Administrative Leave**

Plaintiff also claims that he suffered a discriminatory adverse employment action cognizable under Title VII, the ADA, and the ADEA when Defendant placed him on administrative leave pending an investigation.

In the Fifth Circuit, "'[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.' Under this standard ... placing [the plaintiff] on paid leave—whether administrative or sick—[is] not an adverse employment action." *McCoy*, 492 F.3d at 559. In fact, school districts have a compelling reason to place teachers on leave after students and parents have filed complaints.

As such, placing Plaintiff on leave pending an investigation was not sufficient to constitute an adverse employment decision.

**5. Teacher's Comments**

While Plaintiff does not directly list the teacher's and principal's comments as adverse employment actions, to be thorough the Court will discuss whether such conduct amounts to an adverse employment action.

Several teachers sat in on Plaintiff's classes and e-mailed him performance reviews. The performance reviews contained both statements of positive encouragement and constructive but negative feedback. The teachers' feedback is not sufficient to constitute an adverse employment action. Likewise, Principal Bank's feedback about his performance is not sufficient to qualify as an adverse employment action. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir. 1997) (holding that "disciplinary filings, supervisor's reprimands, and ... poor performance by the

8

employee" do not constitute adverse employment actions), abrogated on other grounds by *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345.

For the aforementioned reasons, Plaintiff cannot show that he suffered an adverse employment action. Therefore, summary judgment is proper. That being the case, the Court need not analyze Defendant's other arguments. Nevertheless, in order to be thorough, the Court will discuss each contention.

### B. Title VII (Race, National Origin, Color)

The *McDonnell Douglas* framework first requires Yates to establish a *prima facie* case of discrimination. Under Title VII, a *prima facie* case of discrimination based on disparate treatment requires a showing that the plaintiff: (1) is a member of a protected class, (2) was qualified for the position at issue, (3) was the subject of an adverse employment action, and (4) was treated less favorably because of his or her membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *Paske*, 785 F.3d at 985. Plaintiff pleads that he is Hispanic and that other Hispanic and white employees were treated less favorably than the African American employees.

Plaintiff alleges, and Spring ISD does not dispute, that Plaintiff is a member of a protected class. That said, Defendant argues that Plaintiff failed to put forth evidence of any adverse employment action taken against him. As discussed earlier, Plaintiff was not subject to an adverse employment action. The Court will not repeat its reasoning as it was explained *supra*. Instead, the Court will focus its attention on the contested fourth element: whether Plaintiff was treated less favorably because of his or her membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

9

Plaintiff's Complaint and Response allege that he and other Hispanic and white employees are treated less favorably than Black employees. (Doc. No. 87 at 13). Defendant states that he has no evidence to support that assertion.

As evidence of the alleged disparate treatment, Plaintiff presents the Court with an e-mail. The e-mail is written by Plaintiff, and it is addressed to his own e-mail address. At the end of the e-mail Plaintiff writes, "I swear under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge." (Doc. No. 1-1, Exhibit V). Given Plaintiff's *pro se* status, the Court will consider this to be an affidavit despite its somewhat unusual format. Even so, the statements do not create a fact issue that would survive summary judgment.

The declaration provides numerous examples of incidents where white and Hispanic teachers were treated differently from Black teachers. Plaintiff does not, however, provide sufficient facts to conclude that the employees were similarly situated employees or that they were "under nearly identical circumstances." *Paske*, 785 F.3d at 985.

Thus, Plaintiff fails to establish a *prima facie* case of Title VII discrimination or retaliation for two reasons: (1) Plaintiff does not establish that there was an adverse employment action and (2) Plaintiff failed to present evidence that he was treated less favorably because of his or her membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. Thus, the Court grants summary judgment in favor of Defendant on Plaintiff's discrimination and retaliation claims under Title VII.

### C. Age Discrimination in Employment Act

Defendant also moved for summary judgment on Plaintiff's age discrimination claim. In addition to arguing that there was no adverse employment decision, Defendant contends that the

Court should grant summary judgment on Plaintiff's age discrimination claim because he cannot make out a *prima facie* case of age discrimination. Alternatively, Defendant has offered a legitimate nondiscriminatory reason for removing Plaintiff from the seventh-grade position, and asserts that Plaintiff cannot show the reasons he was removed were pretext for age discrimination. (Doc. No. 86-87).

Plaintiff states in his Response that the decision to place Plaintiff under a "support plan" was solely based on Plaintiff's age. (Doc. No. 89 at 10). His entire argument on the issue is as follows: "Plaintiff (sic) 67, Lugo was in her 20's." (Doc. No. 89 at 35).

As discussed, to assert a *prima facie* case under the ADEA, a plaintiff must show: (1) that he engaged in a protected activity, (2) that there was an adverse employment action, and (3) that a causal link existed between the protected activity and the adverse employment action. *Holtzclaw*, 255 F.3d at 259.

While Plaintiff's replacement (Lugo) was younger in age (in her 20's), Plaintiff has brought forth no evidence establishing that there is a causal connection between the decision to place him on a support plan and the Plaintiff's age. Plaintiff does not argue, much less direct the Court to any evidence that Defendant's employees made any age-related statements to Plaintiff. Neither does Plaintiff offer any statistical proof that Defendant has a pattern of practice of hiring younger applicants. A difference in age alone is not sufficient to establish a causal connection. Accordingly, Plaintiff cannot satisfy the causal link requirement.

Defendant also reasons that Plaintiff's ADEA claims must fail because it has a legitimate, non-discriminatory reason for choosing Lugo over Yates. "An employer may avoid liability for . . . discrimination . . . by producing evidence tending to show that it had a legitimate, nondiscriminatory reason for its disputed decision." *Patrick v. Ridge*, 394 F.3d 311, 316 (5th Cir.

11

2004). "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)).

Defendant primarily contends that its legitimate, nondiscriminatory reason for reassigning Plaintiff was due to "ongoing concerns about his performance." (Doc. No. 87 at 18). Otherwise stated, Defendant believes the reassignment was warranted due to Plaintiff's lack of improvement despite a support plan. The District supports its conclusion in part by directing the Court to a declaration by Principal Kevin Banks ("Principal Banks"). (Doc. No. 87-2). In that sworn declaration, Principal Banks explains that "[b]ased on walkthrough evaluations that both Mr. McAfee and I did of Mr. Yates in October 2021 ... [Spring ISD] still had ongoing concerns about Mr. Yates' performance, as he continued to struggle with the level of the rigor of his instruction, his pacing and time management, his checks for understanding, and his classroom management." (Doc. No. 87-2 at ¶ 9). As such, the Defendant "determined that a stronger teacher was needed for the 7th grade class." (Doc. No. 87-2 at ¶ 18). The Defendant chose to hire Lugo "a brand-new teacher straight out of teaching college who we felt had the potential to be better with the 7th grade classes. [Principal Banks] moved Mr. Yates back to the 6th grade push-in position, as [Principal Banks] believe[d] that he would do better working with smaller groups of students." (Doc. No. 87-2 at ¶ 10). Considering the declaration, the District has clearly brought forth a legitimate, nondiscriminatory reason for hiring Lugo and reassigning Plaintiff. As such, the Court finds that the Defendant has met its burden as to this issue.

Lastly is step three of the *McDonnell Douglas* analysis. In this part of the test, Yates must bring forth evidence to establish a genuine issue of material fact that Defendant's legitimate reason is a pretext. Defendant argues that Yates cannot meet his burden in establishing that its legitimate,

12

nondiscriminatory reasons for hiring Lugo and reassigning Plaintiff is pretextual or that Yates' age played a role in its selection.

Once the employer satisfies its burden of providing a legitimate, nondiscriminatory reason for the employment decision:

> [T]he onus shifts back to the plaintiff to prove either that the defendant's articulated reason is merely a pretext for race [color, sex, national origin, or age] discrimination, or that the defendant's reason, while true, is only one of the reasons for its decision, and another 'motivating factor' is the plaintiff's protected characteristic (the mixed-motives alternative).

*Autrey*, 704 F.3d at 347. Neither party offers much, if any, argument (and certainly no evidence) as to the mixed-motives alternative, so the Court will focus its analysis on the pretext alternative.

The plaintiff "must substantiate his claim or pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). "A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated [his or her] employer's decision, such as through evidence of disparate treatment, or that her employer's explanation is unworthy of credence." *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013); *see also Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571, 578 (5th Cir. 2020) ("Pretext can be proven by any evidence that casts doubt on the credence of the employer's proffered justification for the adverse employment action.").

In response, Plaintiff reiterates that the "'support plan' was a pretext to demote Mr. Yates, for his race, color, age (almost 70 years old), and perceived disability." (Doc. No. 89 at 19). Yates' unsupported, conclusory assertions that the Defendant's conduct was pretextual is not competent summary judgment evidence; it is not sufficient to create a fact issue as to whether Defendant's acts were pretextual.

Accordingly, the Court grants summary judgment on Plaintiff's ADEA claims.

### D. Americans with Disabilities Act

Next, Defendant contends that "Plaintiff has provided no evidence of having a disability or that he was treated differently or subjected to adverse employment action due to a disability." (Doc. No. 87 at 18). Plaintiff disagrees, claiming his hearing loss is a disability and that he was discriminated on the basis of his hearing loss.

In an ADA case, a plaintiff must show (1) he engaged in an activity protected by the ADA, (2) he suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action. *Lyons*, 964 F.3d 298.

In Plaintiff's deposition he explains that he has hearing loss in one ear, and therefore, has to sit with his other ear facing the speaker. (Doc. No. 87-1 at 74:20-76:17). He goes on to state that he told Principal Banks about his hearing loss, and in response, "he didn't say anything." (Doc. No. 87-1 at 75:9). When asked if Principal Banks ever brought it up his hearing loss again, Plaintiff at first answered "no." (Doc. No. 87-1 at 75:19-21). He later explained that sometimes in meetings Principal Banks would ask if Plaintiff could hear. (Doc. No. 87-1 at 75:25-26:17).

Such conduct is neither an adverse employment action nor is it discriminatory.

### E. Defamation

Defendant's last argument addresses Plaintiff's defamation claim. Defendant argues that it, as a public school, is immune from a defamation claim.

In Texas, under the doctrine of sovereign immunity, a governmental entity or political subdivision cannot be held liable for the actions of its employees unless there is a constitutional or statutory provision waiving such immunity. *See City of Amarillo v. Martin*, 971 S.W.2d 426, 427 (Tex.1998); *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341

14

(Tex.), cert. denied, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998); *Harris County v. Dillard*, 883 S.W.2d 166, 168 (Tex.1994). A political subdivision of the state is defined under the act to include school districts. Tex. Civ. Prac. & Rem. Code § 101.001(3).

"Like the state, counties and other political subdivisions can only be liable where an exception to such immunity is provided for in the Texas Tort Claims Act." *Diaz*, 802 F.2d at 14 (citing Tex. Civ. Prac. & Rem. Code § 101.001(3)(B). The Texas Tort Claims Act contains a limited exception that allows for cases to be brought against school districts when a plaintiff's injuries are proximately caused by an employee's operation or use of a motor-driven vehicle or motor-driven equipment or by a condition or use of tangible real or personal property. Tex. Civ. Prac. & Rem. Code § 101.021. Here, the Plaintiff's claim of defamation does not involve the operation or use of a motor vehicle or the condition or use of tangible personal or real property. Therefore, the claim does not fall within the scop of the Texas Tort Claims Act, and the Defendant is immune rom liability. The Court grants summary judgment on Plaintiff's defamation claims. *Leatherwood v. Prairie View A&M Univ.*, 2004 WL 253275, *3 (Tex. App.—Houston [1st Dist.] Feb. 12, 2004, no pet.) ("[I]ntentional torts, such as defamation, do not fall within the scope of the waiver of immunity under the Tort Claims Act.").

## IV. CONCLUSION

For the reasons mentioned, the Court grants the Defendant's Motion for Summary Judgment. (Doc. No. 87). All other pending motions are denied as moot.

Signed this 31st day of August, 2023.

Andrew S. Hanen
United States District Judge

15